## JARRELL–EVANS DRY GOODS CO. v. ALLEN et al. (No. 1201.)

(Court of Civil Appeals of Texas. El Paso. April 7, 1921.)

1. **Landlord and tenant ⬤⟼328(3)—Landlord does not lose crop lien as to judgment creditor because he allowed tenant to sell crops.**

Though a landlord allowed his tenant to sell crops and deposit the rent to his credit, thus waiving his lien as to purchasers, the lien given by Vernon's Sayles' Ann. Civ. St. 1914, art. 5475 et seq., as amended by Laws 1915, c. 38 (Vernon's Ann. Civ. St. Supp. 1918, art. 5475 et seq.), was not waived with respect to a judgment creditor of the tenant who levied on unsold crops.

2. **Landlord and tenant ⬤⟼332—Lien ordinarily applies only to crops on premises.**

A landlord's lien applies only while crops remain on the premises and for one month thereafter, and a landlord suing a purchaser at sale under execution against tenant as for conversion must allege and prove that the crop was at the time of the conversion either on the premises or had not within his knowledge been removed for a greater time than 30 days.

3. **Landlord and tenant ⬤⟼332—Burden on purchaser at execution sale to show waiver of landlord's crop lien.**

In an action by landlord for conversion of cotton on which the landlord had a lien for rent and advances, where execution against the tenant had been levied on the cotton while it was in possession of the tenant either on the premises or at the place where the tenant had taken it to have it prepared for market, *held*, that the burden of showing waiver or loss of lien was on defendants, purchasers at execution sale, who claimed that his lien had been waived by the landlord because he allowed the tenant to sell crops, so judgment for defendants cannot be sustained on the theory that the landlord did not establish that the crops were on the premises or had not been removed for more than 30 days.

Appeal from Haskell County Court; Jas. P. Kinnard, Judge.

Action by the Jarrell-Evans Dry Goods Company against G. H. Smithee, W. C. Allen, and others. From a judgment against

---

⬤⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

defendant Smithee, but in favor of the defendants Allen and Grissom, plaintiff appeals. Affirmed in part, and reversed and rendered in part.

H. R. Jones, of Corpus Christi, for appellant.

McConnell & Grissom, of Haskell, and Harry Tom King, of Abilene, for appellees.

WALTHALL, J. This suit was brought by appellant, Jarrell-Evans Dry Goods Company, a private corporation, to recover, as landlord, against G. H. Smithee, as tenant, a balance due appellant for money furnished him to enable him to make a crop on appellant's land in Haskell county for the year 1919, and for a balance due as rent for that year, and for the foreclosure of appellant's landlord's lien on two bales of cotton and cotton seed, and against W. C. Allen, C. D. Grissom, Hardy Grissom, and Clyde Grissom to recover of them the value of said two bales of cotton and the cotton seed, alleged to have been unlawfully and wrongfully seized under execution upon a judgment against Smithee and by appellees converted to their own use.

Appellant alleged that it was the owner of the 197.10 acres of land in Haskell county. It rented said land to Smithee for the year 1919 for farming purposes; the rental agreement being that Smithee should pay to appellant as rent one-fourth of all cotton and cotton seed produced or raised on said land during that year. To enable Smithee to make a crop on said land it was necessary for appellant to furnish and it did furnish to Smithee money for said purpose. There is due appellant by Smithee for money so furnished the sum of $461.40 besides rent of the value of $270.95, which was past due and unpaid. On November 8, 1919, Smithee had ginned and prepared for market two bales of lint cotton and 900 pounds of cotton seed. One-fourth of said cotton and cotton seed belonged to appellant for rent, and it claimed to have a landlord's lien on said cotton and cotton seed to secure it in the payment of its rent and money furnished. On the 8th day of November, 1919, appellees Grissom caused defendant Allen, as sheriff, to levy a writ of execution issued out of the justice court, in a cause in which appellees Grissom are plaintiffs and Smithee is defendant, upon said cotton and cotton seed, and caused same to be sold under said execution and levy, took possession of said property, and converted it to their own use and benefit. Appellant prayed for judgment for its rents, debts, interest, damages, costs, and foreclosure of its lien and for the value of said property.

Appellees answered by general demurrer, general denial, by special answer pleaded their judgment against Smithee, the issuance of the execution as above and the levy upon the property, advertisement and sale by the sheriff, Allen, purchase by appellees Grissom, and the application of the proceeds as a credit upon said judgment. By reason of said facts appellees pleaded an abandonment and waiver by appellant and that it is now estopped from asserting any right or title to said property or landlord's lien thereon, or right to subject same to any indebtedness of appellant against Smithee.

Appellees Grissom deny that the money advancements were secured by any landlord's lien upon the said property; deny their conversion of the property by the levy of the execution and sale thereunder. They allege that for several years, including 1919, it had been the custom of dealing between appellant and Smithee that Smithee should account to appellant for rents and advances made to him by payment to appellant of money, and not through or by virtue of any landlord's lien; that Smithee had the free consent of appellant to sell the products of said farm at any time he chose to do so and without consulting appellant, and that he did sell practically all of said products in 1919; that appellant relied upon Smithee to pay the rents and advances by making deposits in certain banks, and waived all rights to subject the products of his farm to the payment of said rents, and only relied and depended on Smithee to pay rents and advances out of the proceeds from the sales by Smithee of said products, and that appellant did not depend upon the cotton involved in this controversy; that by reason of which appellees Grissom insist that appellant has no lien on said cotton, and has no right to pursue same in the hands of any of appellees, and no right to a judgment for the value of said cotton or for its conversion. Smithee admitted his indebtedness to appellant as alleged by appellant.

The facts are practically uncontroverted, and, so far as necessary to a decision of this case, they are substantially as follows: Appellant owned the land, and for the years 1916, 1917, 1918, and 1919 rented same to Smithee for the purpose of farming. For the year 1919 appellant was to furnish the seed wheat and receive as rent one-half of the wheat raised. For cotton and feed raised appellant was to receive as rent one-fourth of the cotton and cotton seed, and one-third of the feed. For the year 1919 appellant furnished Smithee $710 to make the crop, and at the time of the seizure of the two bales of cotton and cotton seed Smithee owed appellant a balance for money furnished of $461.40 to make a crop for 1919 beside rent of the value of $270.95. It had been the custom and arrangement between appellant and Smithee for the years preceding 1919, and including the year 1919, not to pay or deliver the crops in kind in discharge of the rent, but that Smithee would sell the cotton in the

open market and deposit the money due appellant in the bank in settlement of the rent and money advances by appellant. For the year 1919 Smithee had not delivered to appellant any cotton or cotton seed. In 1919 Smithee deposited in the bank in his own name for rent and advances, the exact amount not made clear, but of which Smithee, in testifying, said:

"I have deposited over $400 to pay this account. * * * I have not deposited more than money enough in the bank under my agreement to pay all I owe them for rent for 1919 and for advances. I never figured it exactly how much I lack. $453.82 still there. One-fourth of $527.79 is to come out of that rent cotton, and $22.35 for rent seed is to be added to the one-fourth. At the time these two bales of cotton was seized it was selling for from 42 to 43½ cents. The cotton and seed was worth more than $460. * * * The money I had in the bank would offset the value of these two bales of cotton. * * * I had four more bales in the field. * * * I sold it in the field. I paid debts with the money. * * * I paid the rent out of what I sold. * * * I did not pay them what I owed for advances. The money in the bank and the cotton seized was more than enough to pay them. * * * I did not sell this cotton. Sure I sold cotton and didn't put the money in the bank. If I had, my other creditors would have gone to the bad. *. * * I reported to my landlord that I had sold that cotton. I believe I told my landlord how much I got for that cotton; I am not sure. He got his rent out of it just the same. I think there is $453 in the bank subject to the payment of the claim sued on in this case, less the rent. The money in the bank was placed there to my credit and would stay that way until I transferred their part to them. * * * This summer when I sold the wheat it was all sold in my name, over $1,100 of wheat, brought up and sold and all placed to my credit, and it was there for several days, which was very careless for me to do. I had no understanding that it would be deposited in my name, but they trusted me to see that they got their rent. That wheat money is like this cotton money; I just neglected it until I was up there and it was convenient for me to settle up with them and transfer the rent to their credit. I have always done that, and there has never been a nickel's difference between us in our settlements. * * * They authorized me to put the rent in the bank in their name. * * * Part of it was their money; in fact, it was nearly all theirs; it would have really all gone to them except I drawed the amount for the picking. * * * I intended that money for them. * * * In a sense they didn't deal with me like they would ordinary tenants; they turned me loose to go do as I please; they left it to me. They depended on me to make a crop and gather it, and then make settlement with them and everything; sell the cotton, handle the proceeds, put it in the bank or put it in my pocket, any way I wanted to, and I would always furnish them duplicates of the deposit slips and receipts showing what I made and what I got for it, and it was satisfactory."

On the 8th day of November, 1919, defendant W. C. Allen was sheriff of Haskell county, and on that day appellees Grissom caused Allen to seize and take into his possession as property of Smithee the two bales of lint cotton of the total value of at least $460, the cotton and cotton seed all raised and produced on appellant's said land by Smithee, appellant's tenant, during the year 1919. The seizure was made by Allen under an execution duly issued out of the justice court of precinct No. 1, Haskell county, in a cause wherein the Grissoms were plaintiffs and Smithee was defendant. The cotton and cotton seed were sold under the execution levy, and purchased by the appellees Grissom at the sale. The case was submitted to the jury on special issues. The jury found in response to the several issues submitted: (1) That Smithee and appellant in 1915 agreed that appellant would not look to the products of said farm for his rents and advances, but that he would trust and depend upon Smithee to sell and dispose of the products of said farm and pay to appellant the amount that would be owing for rents and advances; (2) that such arrangement continued through the succeeding years down to and including the year 1919 between appellant and Smithee; (3) that Smithee, pursuant to said agreement deposited in the Farmers' State Bank of Haskell, Tex., $453.80, to be applied as a credit upon the claim of appellant for rents and advances asserted in this case; (4) that appellant did not make a different rental contract with Smithee for the year 1919 than the contract for previous years. The court in charge put the burden of proof upon appellant as to the fourth of the above issues, and put the burden of proof upon appellees on issues first, second, and third.

Judgment was rendered in favor of appellees Grissom that appellant take nothing by his suit, and in favor of appellant as against Smithee for the sum of $732.35, with interest, and for costs.

The question of fact at issue as tendered by appellees in their special answer was whether by several years' dealing between appellant and Smithee it had been a custom of dealing between appellant and Smithee that Smithee should account to appellant for rents and advances by making sales of the crops and accounting to appellant in money, and not for the crop in kind, and whether such custom prevailed in 1919.

We have stated the material portions of the evidence on the issue, and think it sufficient to establish the fact that such custom did exist in the year 1919, and that appellant and Smithee acted upon and in furtherance of such custom and understanding. The evidence establishes the fact that Smithee did make sales of the products of the farm for the year 1919, and paid rent and advances with the proceeds of such sales, and that he deposited some of the money, proceeds of the sales, in the bank in

pursuance of such custom and understanding that he should do so.

The question then is presented: Did appellant, by reason of such custom and understanding and their acting thereunder, waive his landlord's lien upon the two bales of cotton and the cotton seed levied upon and sold under the execution and bought by the Grissoms at execution sale?

[1] Article 5475 et seq. Vernon's Sayles' Texas Civil Statutes, as amended by the act of March 5, 1915 (Laws 1915, c. 38 [Vernon's Ann. Civ. St. Supp. 1918, art. 5475 et seq.]), give the landlord a preference lien upon the cotton and cotton seed of the tenant for any rent that may become due and for all money furnished by the landlord to the tenant to make a crop on the rented premises. The lien extends to all the crop raised, and the lien is not satisfied until all the rent and advances have been paid. Wilkes v. Adler, 68 Tex. 689, 5 S. W. 497; Zapp v. Johnson, 87 Tex. 641, 30 S. W. 861; Boydston v. Morris, 71 Tex. 697, 10 S. W. 331.

No question is made but that the cotton and cotton seed levied upon and sold were raised upon the rented premises by Smithee during the crop year of 1919.

The evidence shows that appellant was to receive as rent portions of the crops raised on the rented premises for the year 1919.

We have concluded that such custom or understanding, and the fact that Smithee had made sales of portions of the crops, and with the proceeds had partially discharged rents and advances due appellant, did not effect a waiver of the landlord's lien upon the unsold portions of the crop in favor of a mere judgment creditor. The case of Melasky v. Jarrell, 62 Tex. Civ. App. 337, 131 S. W. 856, and the cases there cited, hold that a landlord may so act as to waive his lien upon the products of the rented premises, and thereby confer power upon the tenant to sell such products discharged from the landlord's lien. · That, evidently would be true as to the portions of the crop sold by the tenant. A purchaser of a tenant authorized by the landlord to sell would take the purchased product discharged of the lien. Also, as held in Keahey v. Bryant, 134 S. W. 409, where the landlord and tenant, as an essential part of the rental contract, have agreed that the tenant should have the right and authority to sell the crops and pay the landlord his part of the money, in such case the landlord would have waived the lien. But the facts here show more a custom, or that the tenant was permitted or authorized by the landlord to sell the crops than that it was an essential part of a rental contract that the tenant should do so, thus relieving the landlord of any interest in the crop itself, and of the landlord's lien.

The facts in this case show that appellees did not purchase the two bales of cotton and the cotton seed from the tenant, Smithee, but at execution sale under a judgment in their favor against the tenant. The doctrine as above has never been applied in favor of the judgment creditor who levies upon and sells the property. Sparks v. Ponder, 42 Tex. Civ. App. 431, 94 S. W. 428; Caswell v. Lensing & Bennett, 183 S. W. 75. Appellees at the execution sale got no better title than Smithee had. We do not think that the fact that appellant, by custom or understanding, authorized Smithee to sell the cotton and cotton seed, and from the proceeds pay the rent and advances due, had the legal effect per se to put the legal title to the landlord's share (one-fourth) of the cotton and cotton seed in Smithee, discharged of the landlord's lien, and discharged of the tenant's duty to apply the proceeds from the sale to the rents and advances. To so hold would place a construction upon what had been the custom or understanding of appellant and Smithee not placed upon it by themselves, and would be foreign to any purpose they had in their understanding and in acting upon the custom or agreement that Smithee could 'sell the products and with the proceeds discharge the rents and advances. It was not the custom or understanding between appellant and Smithee, as we construe the evidence, that Smithee should own all of the crops. No title to the landlord's one-fourth of the crops, as we view it, passed to Smithee by reason of the custom or understanding as stated.

[2, 3] It is insisted by appellees that the landlord's lien applied only while the crops remain upon the premises and for one month thereafter, and that a landlord suing a purchaser at execution sale as for a conversion must allege and prove before he can recover that the cotton was at the time of the conversion either upon the rented premises, or that same had not been within his knowledge or by his consent removed from the premises for a greater period than 30 days, and failure to so allege and prove recovery could not be had against such purchaser.

The above, we think, states a correct general proposition of law, as stated in Jenkins v. Patton, 21 S. W. 693. In that case the tenant had removed from the rented premises, and the property had been removed from the rented premises for more than 30 days before any steps had been taken by the landlord to subject the property to his lien. The case simply held that, by reason of such facts, the landlord had lost his lien. No question of burden of pleading or proof was in the case. Here no issue of fact is raised either by pleading or proof as to the removal of the property from the premises. The execution was levied on the property as the property by Smithee, and, as we construe the facts, taken from Smithee's possession on the premises, or from the place where Smithee had taken the cotton to have it prepared for market. If appellant had for any reason waived or lost his lien, we think the

burden would be upon appellees to show such facts as would establish the waiver or loss of lien. The issue seems to us to be defensive, and appellees have alleged the waiver and loss of the lien by reason of levy and by reason of the custom of dealing between appellant and Smithee that Smithee should account to appellant for rents and advances by payment of money by sales of the crops.

What we have said above sufficiently indicates our views on some assignments and other independent propositions without discussing them in detail.

We think the judgment rendered is contrary to the law arising on the facts as claimed in the fifth assignment. It follows also that it was error to overrule appellant's special exceptions to appellees' special answer, as complained of in the sixth and seventh assignments.

For the reasons stated the judgment of the trial court is sustained as to defendant Smithee. As to appellees W. C. Allen, C. D. Grissom, Hardy Grissom, and Clyde Grissom the judgment is reversed, and here rendered in favor of appellant, Jarrell-Evans Dry Goods Company, and against said W. C. Allen, C. D. Grissom, Hardy Grissom, and Clyde Grissom in the sum of $460, the value of the said two bales of cotton and cotton seed at the time of the levy and sale of same at execution sale, with interest thereon from the 8th day of November, 1919, at the rate of 6 per cent. per annum, the date of the seizure of said property.

Affirmed in part, and reversed and rendered in part.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes